Pratt, J., (concurring.)
The contract sued on contains a clause that certain stock shall be issued and given and turned over “free of charge” to the plaintiff. Upon that clause it was held at circuit that the contract was, in effect, that the stock should be issued without consideration to the company, and was therefore void. There was, however, another clause in the contract, that the plaintiff and his joint owner, “in consideration of the performance of the above conditions,” would duly license the company to solely manufacture, etc., under a patent described in the contract. Taking the whole contract together, it did not appear that no consideration was to pass to the company for the stock. On the contrary, the company were to receive an exclusive license. If that license was of the value of $9,800, that of itself would be full value for the stock. Direct evidence of the value of the license was not given, but it clearly appears that all parties regarded it of great value; for the contract contained a provision for the benefit of the owner of the other half of the patent, by which, for a similar license, he was to receive a sum not less than $1,200 a year. Without regard to the possibility of the provision for the co-owner resulting in a larger sum than the minimum guarantied, $1,200 a year, and assuming, in accordance with the presumptions of law, "that the intrinsic value of the stock was its par value, it thus appears that the consideration agreed to be paid to the plaintiff’s co-owner, and which is admitted by the pleadings to have been in fact paid up to the time of trial, was largely in excess of that stipulated for the plaintiff. The $1,200 a year would in the life-time of the patent amount to $20,400, and, with the addition of simple interest at the legal rate upon the payments, would in 17 years amount to $30,192. If the stock stipulated to be issued to the plaintiff should pay 6 per cent, during 17 years, he would receive in that time $9,996. Simple interest would bring the amount to $14,794; and by adding $9,800, the presumptive value of the stock, plaintiff, at the expiration of the patent, would receive $24,594, being $5,598 less than his co-owner would receive during that time. This calculation is not needed to show that the dismissal of the complaint was an error. It is enough to say that a consideration which the parties now adverse to the plaintiff considered to be worth, and for which they agreed to pay,. $30,000 in 17 years, is not one which the court can, at their instance, as a matter of law, "declare to be of no value. If we assume that Schmidt’s half of the patent was worth what defendants are paying for it, Beyrich’s half was worth more than $9,800. The contract, however, does not provide that the license should be the sole consideration the company were to receive for the stock. Ballin' and Liebler contract with the plaintiff to cause the stock to be issued, and to be turned over to him. As to whether the company is to receive any other or further consideration for the stock than the license, the contract is silent. If that license was not worth $9,800, then, as the law forbids the issue of stock without the actual receipt by the company of the full face value, Ballin and Liebler, in order to fulfill their contract, and give plaintiff the valid stock he had a right to demand, would be obliged to make up the difference to the company in cash or its equivalent. If it be said they did not agree to pay anything for the stock, the answer is that was not a matter that interested Beyrich, and was not a matter there was any occasion for the contract to promise. To Beyrich it was indifferent how they paid provided he obtained valid stock. That would satisfy the contract,—nothing else would; for a contract to deliver stock implies that the stock will be valid. The law made it certain that in companies organized under the act of 1875 the consideration paid must be equivalent to cash, and to recite that requirement in the contract would have been superfluous. . The respondent argued that as one-half of the stock must be issued before the company could be organized, and the other half would be only 200 shares, there would not be so many as 392 shares under the control of the company, and the execution of the contract would therefore be impossible. That objec *296 tion is answered by the statute, which provides a way in which additional shares can be issued by a vote of the company, subscription of the stock, and payment of the amounts prescribed by law. Ballin and Liebler were to control the company, and could have had no difficulty in complying with the requirements of the statute. They assumed that burden, and Beyrich was to look to them for the stock. It follows that the contract, not requiring acts in contravention of law, is valid. Further objection is made that by the contract the license to the company was to be the joint act of Beyrich and Schmidt, and a joint license is not proved. The contract does not prescribe that the license shall be joint. Both owners are to license. But the contract does not specify whether they shall both subscribe to a single instrument, or whether separate papers shall be executed. Nor is that detail a matter of importance. There is no such defense pleaded as that Schmidt refused to license, and the pleadings admit that he has been paid his agreed royalty and salary. The pleadings also admit that the company has manufactured and sold under the license described in the contract, and the testimony is to the effect that it has been done to a great extent. The defendants and the company could waive any informalities in the license, and, if any existed, apparently have done so. The testimony shows Beyrich persistently offered to give his license, and the defendants were never ready to receive it. That otter to perform entitled him to bring >his action. Defendants argue that the proofs do not show any evidence of damage; that the value of the stock would depend largely upon the nature of the company’s assets, of which no evidence is given; and that the jury had no means to determine the value of the stock, had it been issued as the contract required. The statute provides that the stock could only be issued for cash or its equivalent. It must at the time of the organization of the company be worth par, which is in accordance with the presumption of law that a chose in action is worth its face. The price paid upon a sale is evidence of value. Crounse v. Fitch, 1 Abb. Dec. 475. And the price defendants gave Schmidt, which would be competent evidence, tends to show that ithe stock was worth more than its face. A further objection is made that ino separate appeal is taken from the order dismissing the complaint. Such a •dismissal at the close of a plaintiff’s testimony, on a" trial, by jury, is not required to be separately appealed from. It is brought up by the appeal from the judgment. No other objections have been made to the plaintiff’s right to recover. We do not think any of these are well founded. As the testimony stood when the plaintiff rested his case, he was entitled to a verdict in his favor for $9,800, and interest from the time of the breach, December 10, 1885. The printed case laid before the court does not show any exception by plaintiff to the dismissal of the complaint. Inspection of the original case, as filed by the judge who tried the cause, shows that the exception was in fact taken. The original record controls; the printed case should be made to conform thereto. Judgment reversed, with costs to the plaintiff, and new trial ordered.